**Opinion issued December 23, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-25-00147-CV

———————————

## IN RE KIRPAL SINGH AND KULWANT SINGH NAGRA, Relators

---

## Original Proceeding on Petition for Writ of Habeas Corpus

---

## MEMORANDUM OPINION

Relators, Kirpal Singh and Kulwant Singh Nagra, have filed an original habeas petition with our Court asserting that respondent trial court judge's contempt and commitment orders issued after the underlying action was removed to federal bankruptcy court are void.[1] We grant the petition.

---

[1] The underlying case is *Surjit Singh, Individually and Derivatively on Behalf of Yogi International, LLC v. Kulwant Singh Nagra; Kirpal Singh; Yogi International, LLC; JK Investment Properties, LLC; Harmandeep Cheema; Damneek Kaur; Armaan Singh Nagra; and Jagroop Kaur*, cause number 2024-77463, pending in the 295th District Court of Harris County, Texas, the Honorable Donna Roth presiding.

**Background**

**A. Final Judgment Entered Against Relators**

Kirpal Singh ("Kirpal"), Kulwant Singh Nagara ("Kulwant"), and Real Party in Interest Surjit Singh ("Surjit") each own a one-third membership interest in Yogi International, LLC. Surjit filed a lawsuit, in his individual and derivative capacity, Cause No. 2022-02400, *Surjit Singh, individually and derivatively on behalf of Yogi International, LLC v. Kulwant Singh Nagra, et al.*, in the 295th Judicial District Court in Harris County, Texas. At trial, the jury returned a verdict for Surjit, finding that Kirpal and Kulwant breached their fiduciary duties and the operating agreement of Yogi International. The trial court signed a Final Judgment on August 16, 2024. Pursuant to that Final Judgment, Kirpal, Kulwant, and Yogi International owe $959,625.00 in actual damages, pre- and post- judgment interest, $725,140.27 in attorney's fees, and court costs. No appeal was filed.

**B. Real Party in Interest Files Underlying Post-Judgment Fraudulent Transfer Action**

On November 4, 2024, asserting that Kirpal and Kulwant transferred assets to avoid satisfaction of the Final Judgment, Surjit, individually and derivatively on behalf of Yogi International, filed a separate fraudulent transfer lawsuit against them, Yogi International, and others, Cause No. 2024-77463, *Surjit Singh, individually and derivatively on behalf of Yogi International, LLC v. Kulwant Singh Nagra, et al.*, in the 295th Judicial District Court in Harris County, Texas (the

2

underlying case here). Contemporaneous with filing the original petition, Surjit applied for a temporary restraining order and temporary injunction.

On November 26, 2024, the court granted Surjit's application for a temporary injunction and set the case for trial in May 2025. Among other relief, the Temporary Injunction prohibited Kirpal and Kulwant from conducting or participating in any special meeting of Yogi International related to the Final Judgment. Specifically, the order included the following:

> Defendants may not conduct or participate in any meeting of Yogi International LLC that attempts to (1) take any action related to the Final Judgment in Cause No. 2022-02400, *Surjit Singh, individually and derivatively on behalf of Yogi International, LLC v. Kulwant Singh Nagra et al.,* or (2) take any action with respect to the $740,000 promissory note issued by Defendants Kirpal Singh and Kulwant Singh Nagra to Yogi International LLC[,] or (3) dispose of corporate assets.

As part of Surjit's efforts to collect the Final Judgment, Surjit filed a Motion for Turnover Order, Charging Order, and Post-Judgment Receivership (the "Receivership Motion"), which was set for hearing on January 13, 2025.

On January 8, 2025, less than a week before the hearing on the Receivership Motion, Kirpal called a special meeting of Yogi International for January 10, 2025. In violation of the Temporary Injunction, the notice stated that one of the purposes of the meeting was to discuss the Final Judgment. During the meeting, Kirpal and Kulwant discussed the Final Judgment. They also voted for Yogi International to file for bankruptcy.

3

## C. Yogi International Files for Bankruptcy and Fraudulent Transfer Action Is Removed to Federal Court

On January 12, 2025, the day before the receivership hearing, Kirpal and Kulwant caused Yogi International to file the Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 25-30233). Kirpal signed the Chapter 11 Petition on behalf of Yogi International. Kirpal and Kulwant did not file for bankruptcy individually and are not bankruptcy debtors.

During the January 13, 2025 receivership hearing, the trial court learned that Kirpal and Kulwant had called the special meeting to discuss the Final Judgment in violation of the Temporary Injunction. As a result, on its own motion, the trial court ordered a show cause hearing for February 24, 2025, wherein Kirpal and Kulwant were ordered to appear in their individual capacities to face contempt charges for willfully violating the Temporary Injunction.

On February 21, 2025 (three days before the show cause hearing), Yogi International filed a Notice of Removal of the present lawsuit to the bankruptcy court.

## D. After Removal, Trial Court Issues Contempt Order and Order of Commitment Against Relators for Pre-Removal Violations

The trial court conducted the show cause hearing on February 24 and 25, 2025. On February 25, 2025, the trial court signed a Contempt and Commitment

Order. The Contempt and Commitment Order contains the following findings of contempt:

> Through the testimony of Kirpal Singh, the record evidence, and the arguments of counsel, the Court finds that its November 26, 2024 Temporary Injunction enjoined the Individual Judgment Debtors from "conduct[ing] or participat[ing] in any meeting of Yogi International LLC that attempts to . . . take any action related to the Final Judgment in Cause No. 2022-02400[.]" The Court further finds that, in contravention of the Temporary Injunction, on January 8, 2025, the Individual Judgment Debtors submitted a notice of a special meeting of Yogi International for the purpose of discussing the Final Judgment against Yogi International. The Court further finds that by conducting and participating in the January 10, 2025 special meeting to discuss the Final Judgment against Yogi International, the Individual Judgment Debtors further violated the Temporary Injunction. Despite the Court's express prohibition of the Individual Judgment Debtors' conducting or participating in any meeting of Yogi International LLC that attempts to take any action related to the Final Judgment in Cause No. 2022-02400, acting with the advice of counsel, Individual Judgment Debtors did hold and did participate in a special meeting for Yogi International on January 10, 2025 to discuss the Final Judgment in 2022-02400. At that meeting, Individual Judgment Debtors voted to seek bankruptcy protection for Yogi International. Individual Judgment Debtors willfully and intentionally disregarded the Court's order. Accordingly, the Court finds Kulwant Singh Nagra and Kirpal Singh to be in contempt of the Court's November 26, 2024 Temporary Injunction, as described above. The Individual Judgment Debtors may purge their contempt by dismissing the bankruptcy case filed by Yogi International, *In re: Yogi International, LLC*, Cause Number 25-30233, In the U.S. Bankruptcy Court for the Southern District of Texas.[2]

---

[2] "Individual Debtors" is defined in the order as Kulwant Singh Nagra and Kirpal Singh.

The order concluded by sentencing Relators to confinement in the Harris County jail for a period of ninety days (90) days for violations of the court's Temporary Injunction order.

The Contempt and Commitment Order signed on February 25, 2025 provides that Relators "may purge their contempt by dismissing the bankruptcy case filed by Yogi International, *In re: Yogi International, LLC*, Cause Number 25-30233, In the U.S. Bankruptcy Court for the Southern District of Texas."  The trial court also issued a series of commitment orders, consisting of the following:

- On February 25, 2025 (the same day the trial court signed the Contempt and Commitment Order), it signed an Order of Commitment applying to both Relators and includes the following sentence: "This Court finds that Kulwant Singh and Kirpal Singh can cure their contempt by authorizing the discharge of the Bankruptcy that was authorized by them on behalf of Yogi International, LLC."

- Also on the same day, the trial court signed separate amended commitment orders for each Relator removing the sentence stating that contempt can be cured by dismissing/discharging the bankruptcy.

- The next day, on February 26, 2025, the trial court further amended its commitment orders to add that Relators are "to be released no sooner than April 11, 2025."  The language regarding purging contempt is still removed in this order.

### E. Bankruptcy Court Declares the Contempt and Commitment Orders Void *Ab Initio*

On February 26, 2025, Yogi International filed a Motion to Enforce the Automatic Stay and Grant Related Relief in bankruptcy court.  The bankruptcy court held a hearing on the motion on February 27, 2025.  On February 28, 2025, the

bankruptcy court issued an order declaring that any order issued by the state trial court after the February 21, 2025 removal of the action—including the contempt and commitment orders issued against Relators—are "void *ab inito*." Specifically, the order provides as follows: "As a result of the removal of the Enforcement Action any orders entered by the State Court after February 21, 2025 (the 'Removal Date') are hereby declared void *ab initio*, until further order by this Court." The footnote to this sentence specifically includes the contempt and commitments orders, providing as follows:

> Based on the representations of counsel, these include: (i) Order for Commitment (entered February 25, 2025 at 10:17 a.m.); (ii) Amended Order for Commitment of Kirpal Singh (entered February 25, 2025 at 1:54p.m.); (iii) Amended Order for Commitment of Kulwant Singh (entered February 25, 2025 at 1:54 p.m.); (iv) Contempt and Commitment Order (entered February 25, 2025 at 2:43 p.m.); (v) Second Amended Order of Commitment for Kirpal Singh (entered February 26, 2025); and (vi) Second Amended Order of Commitment for Kulwant Singh (entered February 26, 2025).

Relators aver that, once the bankruptcy court issued its order, Relators' counsel filed the order with the trial court.

**F. Relators File Petition for Writ of Habeas Corpus Challenging Contempt and Commitment Orders**

On March 3, 2025, Relators filed their Petition for Writ of Habeas Corpus. Surjit filed a response to the petition on March 4, 2025. On March 7, 2025, our Court issued an order discharging Realtors from custody pending consideration of

their petition upon each filing and executing a $1,500 bond.  *See* TEX. R. APP. P. 52.8(b)(3); *see also* TEX. GOV'T CODE § 22.221(d).

## Analysis

The trial court signed a combined Contempt and Commitment Order, followed by amended commitment orders.  *See Ex parte Hernandez*, 827 S.W.2d 858, 858 (Tex. 1992) (per curiam) (orig. proceeding) ("[A] written judgment of contempt and a written order of commitment are required by due process to imprison a person for civil constructive contempt.");  *In re Tavarez*, 681 S.W.3d 909, 913–14 (Tex. App.—Eastland 2023, orig. proceeding) (citing *Hernandez*, 827 S.W.2d at 858) ("The commitment order need not take a particular form and may be included in (1) the contempt judgment, (2) a separate order issued by the trial court, or (3) an attachment or order issued by the clerk at the trial court's direction."); *In re Markowitz*, 25 S.W.3d 1, 3 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (noting contempt judgment and commitment order may be combined in the same document).

A relator who challenges a contempt order by an original habeas corpus proceeding is entitled to discharge if the contempt order or commitment order is void.  *Ex parte Tanner*, 904 S.W.2d 202, 203 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding) (citing *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding)).  In an original habeas proceeding, "'the relator bears the burden

8

of showing that the contempt order is void.'" *In re Luther*, 620 S.W.3d 715, 721–22 (Tex. 2021) (per curiam) (orig. proceeding) (quoting *In re Coppock*, 277 S.W.3d 417, 418 (Tex. 2009)). "[T]he order or judgment challenged is presumed to be valid until the relator has discharged his burden of showing otherwise." *In re Chaumette*, 456 S.W.3d 299, 304 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *see In re Parks*, 264 S.W.3d 59, 61–62 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding).

Relators assert that the contempt and commitment orders are void because (1) they violate the bankruptcy stay and (2) they were issued after the case had been removed to federal bankruptcy court. We address Relators' second argument, which is dispositive of this proceeding.

### A. Texas Law Regarding State Court Jurisdiction to Issue Sanctions for Pre-Removal Conduct

The Supreme Court of Texas has held that, after removal to federal court, state courts retain jurisdiction to issue sanctions for pre-removal conduct "so long as the sanction does not operate upon the merits of the underlying action." *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (per curiam) (orig. proceeding); *see In re U.S. Silica Co.*, 157 S.W.3d 434, 439 (Tex. 2005) (citing *Bennett* as "holding trial court retained power to sanction litigant after removal to federal court"). The supreme court noted that "federal courts have no authority to impose sanctions for pre-removal conduct that occurred in state court." *Bennett*, 960 S.W.2d at 40 (citing *Willy v. Coastal*

9

*Corp.*, 915 F.2d 965, 968 n.8 (5th Cir.1990), *aff'd*, 503 U.S. 131(1992)).  The court explained that, if it "conclude[d] that state courts should not go forward after removal with an adjudication of sanctions for pre-removal conduct," then "abuse of the state judicial process may be placed beyond the reach of any court, state or federal." *Id.*

In *Bennett*, the supreme court considered whether a party's filing of nonsuit or the subsequent removal to federal court deprived a state trial court of jurisdiction to consider, sua sponte, whether sanctions should be imposed on attorneys for their pre-removal conduct.  *See id.* at 36.  After plaintiffs filed a nonsuit and defendants removed the cause to federal court, state court Judge Max Bennett ordered sanctions against plaintiffs' attorneys for knowingly and intentionally violating local rules providing for random assignment of cases to the eight district courts in Nueces County.  *Id.* at 37.  Judge Bennett sought and was granted mandamus relief by the supreme court after the court of appeals directed him to sign the order of nonsuit and vacate the order for sanctions.  *Id.* at 36.  The court held that "neither the filing of a nonsuit nor the subsequent removal of a case to federal court deprived the state court of jurisdiction to consider, *sua sponte*, whether sanctions should be imposed on attorneys for pre-removal conduct when the sanctions are unrelated to the merits of the removed case." *Id.*  The court explained as follows:

> We do, however, find guidance in federal caselaw which holds that federal courts retain jurisdiction even after a case has been remanded to

10

state court to sanction counsel for post-removal conduct that occurred in federal court. *See Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 445–46 (9th Cir.1992). The same principle applies to suits originally filed in federal court; the trial court retains jurisdiction to sanction counsel for his or her conduct during the proceedings even after the plaintiff files a notice of dismissal, *see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S.Ct. 2447, 2456, 110 L.Ed.2d 359 (1990), and after an action is dismissed for want of jurisdiction, *see id.* at 395, 110 S.Ct. at 2455–56 (citing 28 U.S.C. § 1919). In *Willy v. Coastal Corp.*, 503 U.S. 131, 137, 112 S.Ct. 1076, 1080, 117 L.Ed.2d 280 (1992), the United States Supreme Court relied upon its holding in *Cooter* and recognized that sanctioning counsel for their conduct is collateral to the merits of the underlying case. 503 U.S. at 137–38, 112 S.Ct. at 1080–81. Sanctioning counsel is "not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter*, 496 U.S. at 396, 110 S.Ct. at 2456.

Judge Bennett found that plaintiffs' counsel had abused the judicial process. He imposed sanctions on the lawyers, not on their clients. Judge Bennett's determinations had no bearing whatsoever on the merits of the claims that were removed to federal court. Nor did his rulings interfere with or tend to have any chilling effect on the pursuit of jurisdiction in the federal system.

We are also mindful that abuse of the state judicial process may be placed beyond the reach of any court, state or federal, were we to conclude that state courts should not go forward after removal with an adjudication of sanctions for pre-removal conduct of counsel. That is because federal courts have no authority to impose sanctions for pre-removal conduct that occurred in state court. *See Willy v. Coastal Corp.*, 915 F.2d 965, 968 n. 8 (5th Cir.1990), *aff'd*, 503 U.S. 131, 112 S.Ct. 1076, 117 L.Ed.2d 280 (1992).

From our review of federal precedent and in light of the practical ramifications, we conclude that state courts retain jurisdiction after removal of a case to federal court to sanction lawyers for pre-removal conduct so long as the sanction does not operate upon the merits of the underlying action.

*Id.* at 39–40.

11

Relying on *Bennett*, our Court has held that a trial court's order denying a recusal motion was not void for having been issued after removal because it did not affect the merits of the removed suit or interfere with the federal court's exercise of jurisdiction over the suit:

> Under these circumstances, we hold that Judge Underwood's order denying Sibley's first recusal motion is not void by virtue of having been signed and entered after removal, given that it did not affect the merits of the removed suit or interfere with the federal court's exercise of jurisdiction over the suit. *Compare In re Bennett*, 960 S.W.2d 35, 39–40 (Tex. 1997) (state court may sanction counsel after removal for pre-removal misconduct so long as sanctions do not affect merits of removed case despite 28 U.S.C. § 1446(d)), *with Meyerland Co. v. F.D.I.C.*, 848 S.W.2d 82, 83 (Tex. 1993) (appellate court's order dismissing appeal after removal to federal court held void under 28 U.S.C. § 1446(d)).

*Sibley v. Seminole Pipeline Co., LLC*, No. 01-15-00775-CV, 2017 WL 491290, at *5 (Tex. App.—Houston [1st Dist.] Feb. 7, 2017, no pet.) (mem. op.).

Although Relators acknowledge that "state courts can determine they have authority to issue sanctions or conduct contempt proceedings post-removal" under *Bennett*, they argue, "The express language of the Supreme Court is clear: in order to retain jurisdiction to sanction for pre-removal conduct, the target of the sanction must be (1) a lawyer and not a litigant or party, and (2) the sanction cannot affect the merits of the underlying actions." We need address only the second argument.

## B. Trial Court's Contempt and Confinement Orders Are Void

Relators contend that the trial court did not retain jurisdiction to sign the contempt and confinement orders because the orders "operate upon the merits of the underlying action." They assert that "Relators and Yogi International (a company of which they own 66%) are jointly and severally liable for a judgment of $1,684,765.27. . . . This judgment is property of the bankruptcy estate, which is property directly affected by [Surjit's] claims of fraudulent transfer." Relators note, "Respondent stated that Relators can 'purge their contempt' by dismissing the bankruptcy proceeding." Relators then argue, "How are Relators supposed to resolve their debt if they are bullied into waiving their legal right to access the bankruptcy court, which is designed to 'maximize the property available to creditors?' *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 144 S. Ct. 1414, 1421, 219 L.Ed. 2d 41 (2024)."

We construe this argument to include a contention that the contempt and commitment orders interfere with or have a chilling effect on Relators' pursuit of jurisdiction in the federal system. In *Bennett*, the supreme court explained that the trial court's sanctions determinations, in addition to having no bearing on the merits of the removed claims, did not "interfere with or tend to have any chilling effect on the pursuit of jurisdiction in the federal system." 960 S.W.2d at 39. In *Sibley*, we held that the challenged order denying recusal was not void because "it did not affect

13

the merits of the removed suit *or interfere with the federal court's exercise of jurisdiction over the suit.*" 2017 WL 491290, at \*5 (emphasis added). Accordingly, if the trial court's orders here interfere with Relators' pursuit of federal jurisdiction over the removed claims, they are void.

Relators argue that the contempt and commitment orders went beyond the trial court's jurisdiction due to the purging language compelling dismissal of the bankruptcy. But the amendments to the commitment orders make it unclear as to whether the purging language is still operable. Thus, we cannot determine whether the trial court went beyond its jurisdiction in issuing the orders (i.e., we need to know what the orders actually provide before we can determine if they go too far).

But we conclude the orders are void regardless of whether we were to decide that the purging language is or is not operable. If we were to conclude that the purging language remains operable, the orders would be void because they interfere with Relators' pursuit of federal jurisdiction (albeit an indirect pursuit as managing members and 66% owners of Yogi International which filed for bankruptcy and removed the fraudulent transfer action). *See Bennett*, 960 S.W.2d at 39-40; *Sibley*, 2017 WL 491290, at \*5. If we were to conclude that the purging language is not operable due to the amendments to the commitment orders, and we were to determine the trial court had jurisdiction to issue the contempt and commitment orders, they would nevertheless be void because the orders are not "clear and

14

unambiguous" as to the terms of incarceration (including what, if anything, Relators can do to be released).  *See Ex parte Rosser*, 899 S.W.2d 382, 387 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding) ("The failure of an order of contempt to specify in clear and unambiguous language that which the contemnor is required to do to purge himself and escape the restraint on his liberty invalidates the order."); *Ex parte Garcia*, 831 S.W.2d 1, 2 (Tex. App.—El Paso, 1992, orig. proceeding) (same); *see also In re Watson*, 108 S.W.3d 531, 533 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) ("[T]he term of [relator's] incarceration should not rest upon implication or conjecture.").  That is because, if the purging language is not operable, then the addition of the language in the final amended commitment orders that Relators were "to be released no sooner than April 11, 2025" indicates that they can obtain a release before serving the full 90-day sentence but fails to indicate what action must be taken to obtain release.

We thus conclude that, regardless of whether the purging language is still operable, the contempt and commitment orders are void.

## Conclusion

We grant Relators' petition for habeas corpus relief and declare void the trial court's February 25, 2025 Contempt and Commitment Order and February 26, 2025 second amended commitment orders, which are the live commitment orders that replaced the prior commitment orders.  We further order Relators released from the

15

bonds set by this Court's March 7, 2025 order, and order Relators discharged from custody.

Andrew Johnson
Justice

Panel consists of Justices Guerra, Guiney, and Johnson.