**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-11332
No. 96-11439

_____

DOROTHY L. OZEE, etc., et al.

                              Plaintiffs,

BOYD L. RICHIE,
as Guardian of the Estate of LOUISE T. PETER,
on Behalf of LOUISE T. PETER Individually
and on Behalf of All Others Similarly Situated,

                              Plaintiff-Appellee,

VERSUS

THE AMERICAN COUNCIL ON GIFT ANNUITIES, INC.,
Individually and as Successor to
the COMMITTEE ON GIFT ANNUITIES,
an Unincorporated Association,
THE LUTHERAN CHURCH-MISSOURI SYNOD,
THE LUTHERAN FOUNDATION OF TEXAS, BAPTIST FOUNDATION OF TEXAS,
GRAY, PLANT, MOOTY, MOOTY & BENNETT,
GENERAL CONFERENCE CORPORATION OF SEVENTH-DAY ADVENTISTS,
d/b/a GENERAL CONFERENCE OF SEVENTH-DAY ADVENTISTS,
ANDERSON UNIVERSITY, INC., d/b/a ANDERSON UNIVERSITY,
MOUNT HOLYOKE COLLEGE, GOOD SHEPHERD HOME FOUNDATION,
NORTHWESTERN UNIVERSITY, UNIVERSITY OF COLORADO FOUNDATION, INC.,
THE SALVATION ARMY, A NEW YORK CORPORATION,
THE SALVATION ARMY, A GEORGIA CORPORATION,
THE SALVATION ARMY, A CALIFORNIA CORPORATION,
THE SALVATION ARMY, AN ILLINOIS CORPORATION,
UNITED CHURCH OF CHRIST,
PLANNED GIVING SERVICES, INC., d/b/a PLANNED GIVING SERVICES,
PLANNED GIVING RESOURCES, HAY/HUGGINS COMPANY, INC.,
PRERAU & TEITELL, VASSAR COLLEGE,
AMERICAN BAPTIST FOREIGN MISSION SOCIETY, ST. OLAF COLLEGE,
WITTENBERG UNIVERSITY, EVANGELICAL LUTHERAN CHURCH IN AMERICA,
THE MOODY BIBLE INSTITUTE OF CHICAGO,
d/b/a MOODY BIBLE INSTITUTE,
THE AMERICAN BIBLE SOCIETY,
and
AMERICAN LEPROSY MISSIONS, INC.,

                              Defendants-Appellants,

DAN MORALES,

                              Appellants.

In re AMERICAN COUNCIL ON GIFT ANNUITIES, INC., et al.,

Petitioners

_____

Appeals from the United States District Court for
the Northern District of Texas
_____
June 12, 1998

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before REAVLEY, SMITH, and EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

An annuitant's guardian sued a collection of charities and universities, alleging that they conspired to fix rates of return on charitable gift annuities. We dismissed defendants' appeals for want of jurisdiction and imposed sanctions. *See Ozee v. American Council on Gift Annuities, Inc.*, 110 F.3d 1082 (5th Cir. 1997). The Supreme Court vacated and remanded for further consideration in light of the Charitable Donation Antitrust Immunity Act of 1997, Pub. L. No. 105-26, 111 Stat. 241 (1997) (to be codified at 15 U.S.C. § 37-37(a)). *See American Bible Soc'y v. Richie*, 118 S. Ct. 596 (1997). We now dismiss plaintiff's antitrust claims, reinstate the sanctions, grant the motion to intervene, and remand for determination of whether any state law claims survive.

I.

The facts and proceedings are set forth at length in our prior opinion. *See* 110 F.3d at 1088-90. To summarize briefly: The defendants were accused of suppressing competition in the market

2

for charitable gift annuities. A purchaser of a charitable gift annuity receives a fixed stream of income in exchange for his "donation" to the charity; the annual payout is referred to as the charitable gift annuity rate, which rate the defendants were accused of fixing.

Dorothy Ozee (later replaced by Boyd Richie) sued the charities on behalf of Louise Peter, an elderly woman who purchased these annuities. She asserted a claim under § 1 of the Sherman Act and added supplemental Texas state law claims. The defendants, having lost their initial motion to dismiss, persuaded Congress to pass a bill aimed at squelching this suit. The Charitable Gift Annuity Antitrust Relief Act of 1995 ("Relief Act") provided that

> it shall not be unlawful under any of the antitrust laws, or under a State law similar to any of the antitrust laws, for 2 or more persons described in section 501(c)(3) of Title 26 that are exempt from taxation under section 501(a) of Title 26 to use, or to agree to use, the same annuity rate for the purpose of issuing 1 or more charitable gift annuities.

15 U.S.C. § 37(a) (1996).[1] The defendants collectively filed a motion to dismiss; defendant Northwestern University filed a motion for summary judgment. The district court denied these motions, *see Richie v. American Council on Gift Annuities*, 943 F. Supp. 685 (N.D. Tex. 1996), and the defendants appealed.

We concluded that we lacked jurisdiction to entertain the appeal under the collateral order doctrine. Our reasoning was based on the fact that Richie's amended complaint alleged a

---

[1] The Texas legislature passed parallel legislation to foreclose Richie's state law claims.

conspiracy involving organizations not exempt under § 501(c)(3); the allegations therefore were not covered by the plain language of the Relief Act, which did not encompass "hybrid" conspiracies between exempt and non-exempt organizations. *See Ozee*, 110 F.3d at 1091-92. We sanctioned the defendants under FED. R. APP. P. 38 for filing a frivolous appeal, noting that in pursuing their collateral appeal, the defendants had blithely ignored the nature of the claim and the basis of the district court's ruling. We ordered the defendants and Northwestern University to pay Richie $15,000 in partial compensation of his costs and attorneys' fees. *See Ozee,* 110 F.3d at 1097.[2]

## II.

The defendants sought relief from our decision in both Congress and the Supreme Court. Congress acted first, once again enacting a statute targeting the instant lawsuit. The Charitable Donation Antitrust Immunity Act of 1997 ("Immunity Act"), signed into law on July 3, 1997, amended the Relief Act. The section entitled "Immunity" provides:

> [A]ny person subjected to any legal proceeding for
> damages, injunction, penalties, or other relief of any
> kind under the antitrust laws, or any State law similar
> to any of the antitrust laws, on account of setting or
> agreeing to rates of return or other terms for,
> negotiating, issuing, participating in, implementing, or
> otherwise being involved in the planning, issuance, or
> payment of charitable gift annuities or charitable
> remainder trusts shall have immunity from suit under the
> antitrust laws, including the right not to bear the cost,

---

[2] Excluded from the sanctions order was Texas Attorney General Dan Morales, who sought to intervene as of right and whose appeal was not frivolous.

4

burden, and risk of discovery and trial . . . .
15 U.S.C. § 37(b) (1998).  The statute also directs, more generally, that "the antitrust laws, and any State law similar to any of the antitrust laws, shall not apply to charitable gift annuities or charitable remainder trusts."  15 U.S.C. § 37(a). Finally, Congress provided that the Immunity Act have retroactive application to all judicial actions pending on its enactment date. *See* Pub. L. No. 105-26, § 3, 111 Stat. 241, 247 (1997).  After enactment of the statute, the Supreme Court granted the defendants' petitions for writs of certiorari, vacated the judgment, and remanded for further consideration in light of the Immunity Act. *See American Bible Soc'y v. Richie*, 118 S. Ct. 596 (1997).

III.

Richie concedes that the Immunity Act applies to the instant case.  We agree.  The Immunity Act amends the Relief Act by affording a far broader exemption to organizations engaging in anticompetitive behavior related to the issuance or payment of charitable gift annuities.  Specifically, the Immunity Act expands the Relief Act's protections to include anticompetitive practices by non-exempt entities or by participants in a hybrid conspiracy. The defendants are covered by the plain language of the amended statute.

Richie urges us to postpone the inevitable and remand to the district court for consideration of the new law.  As authority, he cites *Concerned Citizens v. Sills*, 567 F.2d 646, 649-50 (5th Cir.

5

1978), where we observed that "[b]ecause the factual basis for the district court's holding was eliminated within days after final judgment was entered, we conclude that the judgment should be vacated and the case remanded for reconsideration in light of the facts as they now stand." Concerned that intervening events might have deprived the court of jurisdiction, we directed the district court "to determine whether plaintiffs still desire to engage in any arguably protected activity which they likely would forego in the absence of the relief they seek." *Id*. at 651. As this language suggests, *Sills* is not on point, because there a remand was necessary for additional fact-finding.[3]

Here, by contrast, there are no additional facts that await development.[4] The Immunity Act erases the distinction between exempt and non-exempt organizationsSSa distinction that might otherwise preclude our exercise of jurisdiction under the collateral order doctrine.[5] But as explained above, the Immunity Act moots the factual questions that did exist, leaving us with an

---

[3] *See also Spiess v. C. Itoh & Co. (Am.), Inc.*, 687 F.2d 129, 129 (5th Cir. 1982) (on remand from Supreme Court) (remanding to district court because "[r]esolution of . . . remaining issues may involve several factual determinations that have not yet been made").

[4] *See In re Holloway*, 955 F.2d 1008, 1015 (5th Cir. 1992) ("We see no compelling reason to subject the parties and the courts to further delays and expense by remanding the case for application of the proper legal standard to the undisputed facts.").

[5] *See Ozee*, 110 F.3d at 1092 n.11 ("Even were we to assume *arguendo* that the Relief Act legalizes conspiracies between exempt and non-exempt entities, there would not be an appealable immunity issue, as the bases on which Richie has challenged the defendants' § 501(c)(3) determinations are factual.").

easily-resolved question of law.[6]  Accordingly, we reverse the order denying the motions to dismiss and render a judgment of dismissal.  We remand to the district court for the limited purpose of determining whether any state law claims survive.

IV.

That leaves the matter of sanctions.  The defendants argue that, under *United States v. Schooner Peggy*, 1 Cranch 103, 109 (1801), we are obliged to "decide according to existing law" the issue of the frivolousness of their appeal.  They contend that because the Supreme Court vacated the prior judgment, there is no frivolous "original appeal" remaining, and it would be improper for us to impose "new" sanctions based on their currentSSand, in light of existing law, meritoriousSSappeal.

We do not agree.  That Congress subsequently amended the law to conform to the defendants' interpretation in no way justifies their earlier conduct.  We measure the frivolity of an appeal by the law existing at the time, not the law as it evolves or is amended in subsequent years.  Defendants point to language from the Immunity Act's legislative history suggesting that this court did not interpret the Relief Act "as broadly as it was intended by Congress."  *See* H.R. REP. No. 146, 105th Cong., 1st Sess. 3 (1997).  Yet, even if we assume that the defendants' interpretation

---

[6] *Cf. Martin v. Memorial Hosp.*, 86 F.3d 1391, 1396-97 (5th Cir. 1996) (holding that a denial of a claim of state action immunity that turns on a question of law is an appealable "final decision" for purposes of 28 U.S.C. § 1291).

7

harmonized with after-expressed congressional intent, their appeal was frivolous under the plain statutory language that existed at the time.

The defendants' contention that they should not be penalized for pursuing an appeal in a case of first impression is unpersuasive. While it is true that we have called sanctions "inappropriate" when the case is one of first impression, *see Estiverne v. Sak's Fifth Avenue*, 9 F.3d 1171, 1174 (5th Cir. 1993) (per curiam), the novelty of a legal issue merely cuts against, but does not preclude, the imposition of sanctions. *See United States v. Alexander*, 981 F.2d 250, 253 (5th Cir. 1993) ("Of course, a claim that is utterly insupportable may be sanctionable even if the circuit has not addressed the issue."). Were this not the case, a patently frivolous but novel legal argumentSS"novel," perhaps, because no litigant would dream of bringing it with a straight faceSSwould not be sanctionable.

The specter of sanctions deters not only the raising of claims that have been considered and rejected repeatedly, but also the pursuit of untested claims that are worthless on their face. We decline to adopt a rule of "first-impression immunity" and, accordingly, we now reimpose the sanctions.[7]

---

[7] We have no need to revisit several of the motions presented in the first appeal. The defendants have withdrawn their petition for writ of mandamus. And given that we have granted the defendants' motion to dismiss, Richie's motion to dismiss the appeal is denied. Morales's appeal, however, is not moot, because he may wish to participate in any proceedings, on remand, regarding whether any state law claims survive. Accordingly, we once again reverse the order denying Morales's motion to intervene as of right, and we grant that motion. *See Ozee*, 110 F.3d at 1094-96.

V.

The motion to dismiss plaintiff's antitrust claims is GRANTED, and a judgment of dismissal of that claim is hereby RENDERED. The order denying Morales's motion to intervene as of right is REVERSED, and the case is REMANDED for purposes of determining whether any state law claims survive. Pursuant to FED R. APP. P. 38, the defendants and Northwestern University are sanctioned $15,000 for their frivolous appeals and are hereby ORDERED to remit that sum to Richie.