# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 6, 2012

No. 10-20080

Lyle W. Cayce
Clerk

BLANCO RIVER, L.L.C.,

Plaintiff–Appellee,

v.

CHRISTOPHER GREEN,

Defendant–Appellant,

DAYLEN GALLMAN,

Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-2822

Before KING, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Blanco River L.L.C. (Blanco River), obtained a summary judgment against Christopher Green that awarded damages of approximately $400,000 and attorney's fees. In post-judgment proceedings, the district court issued three written rulings that Green challenges on appeal and two of which his counsel,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20080

Daylen Gallman, also challenges. The district court entered "Supplemental Findings and Declaration," issued an order imposing sanctions against Green and Gallman, jointly and severally, and entered an injunction against Green and Gallman enjoining them from interfering with the collection of the judgment against Green. We affirm in part but vacate the injunction and remand for further proceedings consistent with this opinion.

## I

Blanco River, L.L.C., a real estate investment vehicle, is a limited liability Arizona corporation that sought to purchase and develop land bordering the Blanco River in Texas. Green was the manager of this venture, which failed. Blanco River sued Green, alleging breach of fiduciary duty, conversion, and breach of contract. Green removed the suit to federal district court. Among other allegations, Blanco River asserted that Green had expended the venture's capital funds for his personal pursuits, including expenditures at "high-end strip clubs," for limousine services, at designer retail stores, for hotel rooms, and for multiple hotel rooms on a single day. Improper cash withdrawals were also alleged. Green denied the allegations and as an affirmative defense, contended that John Aird, a significant shareholder in Blanco River who animated the suit against Green, was not authorized to bring suit on behalf of Blanco River.

Two months after the case was removed to federal district court, counsel for Green moved for leave to withdraw. These attorneys had their offices in Illinois, and the district court had denied them permission to continue to appear telephonically. In the motion to withdraw, counsel also stated that Green "has been unable to pay the legal fees incurred to date and has not indicated an ability to do so going forward." The district court granted the motion to withdraw on December 8, 2008, and gave Green until December 29 to obtain new counsel. Grasso, one of the withdrawing counsel, provided the court with Green's contact information, including Green's email address. Green's email

2

No. 10-20080

address was entered into the court's electronic filing database and electronic notification system.

On December 16, after Green's counsel withdrew and before new counsel entered an appearance, Blanco River moved for summary judgment on its breach of fiduciary duty claim. On December 29 Green faxed and emailed a request for an extension of time until January 9 to obtain new counsel. He used the email address provided by former counsel. The court granted the extension. On January 9, 2009, Green emailed the court that he had retained The Beckham Group as counsel. The next business day, Monday January 12, the district court's case manager emailed Green at 9:10 a.m. that his attorneys had until 3:00 p.m. that day to enter an appearance. Green replied that day, after the 3:00 deadline, saying that he had been traveling and would contact his attorneys in the morning.

The next day, January 13, the district court granted summary judgment in favor of Blanco River and against Green, providing: "On its motion for summary judgment, Blanco River, LLC, recovers $396,575.00 in damages and $7,250.00 in attorney's fees from Christopher Green."

Green filed an appeal from this summary judgment, but he subsequently dismissed that appeal pursuant to FED. R. APP. P. 42(b). Blanco River initiated post-judgment discovery, to which Green responded through his new attorney Gallman. Green's response to each interrogatory was a variant of the assertion that Aird lacked any authority to take legal action on behalf of Blanco River.

Green, represented by Gallman, also filed an action in state court in Hays County, Texas seeking a declaratory judgment that Aird did not have the authority to seek to collect the judgment against Green on behalf of Blanco River. Green also alleged in his state court suit that Aird had improperly been reimbursed $150,000 of his investment in Blanco River, and Green sought a return of that amount to the limited liability corporation.

3

No. 10-20080

Blanco River then took further action in federal district court, filing a motion to compel post-judgment discovery and for sanctions. Blanco River attached to its motion a November 2009 letter from Gallman to an investor in Blanco River asking for a capital call, in which Gallman stated that Blanco River had secured its judgment against Green in federal district court without allowing Green to respond and that "Aird did not 'prove' any cause of action against Mr. Green" in that suit. The letter also attached Green's responses to the post-judgment interrogatories, which contained Green's assertions that Aird had no authority to act for Blanco River.

At a hearing on these matters, the district court suggested that Blanco River file a motion to enjoin Green's Hays County action as well as a purported attack on the judgment against Green in an Illinois state court proceeding to register that judgment. Blanco River then filed such a motion. Two days prior to the hearing on the injunction and other pending matters, the Hays County suit was "non-suited with prejudice" by Green through Gallman as his counsel.

In the post-judgment proceedings, the federal district court ordered Gallman to appear personally, despite his protestations that he had not formally appeared in the case. Gallman appeared at the hearings.

The district court ultimately entered three rulings, from which appeal is now taken. The court issued "Supplemental Findings and Declaration," that included a finding that Green had no "valid authority for Blanco River as manager or otherwise" after July 2006. The court entered a separate order sanctioning Green and Gallman $4,000, jointly and severally, to cover Blanco River's attorneys' fees in seeking to enforce the judgment obtained against Green. The district court's written order stated that Green and Gallman had "filed a collateral attack" in state court on the district court's judgment and that the state court suit had "no basis in fact or law" and it "had no legitimate purpose." Green and Gallman were also enjoined in another order from

4

No. 10-20080

"interfering in the collection of this court's judgment," citing the Hays County suit, the proceedings in Illinois, and Gallman's failure to investigate Green's "fals[e]" accusations that the district court had denied due process in granting summary judgment against Green that, even if true, would "not support a collateral attack" on the judgment.

Green appeals all three rulings of or actions by the district court, and Gallman appeals the sanctions order and injunction.

## II

Green argues on appeal that the original summary judgment is void, contending that he was deprived of due process in that proceeding. He contends that because the summary judgment was void, the district court had no authority to "modify" the final summary judgment by entering supplemental findings almost a year after the summary judgment issued. We consider whether the underlying judgment is void without deference to the lower court's determination,[1] but for the limited purpose of determining whether the supplemental findings challenged in the present appeal are referable to a valid judgment.

We conclude that there was no deprivation of due process, and the summary judgment against Green was not void. The Supreme Court recently readdressed the interplay of due process and notice. It restated that "[d]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Due process does not require actual notice."[2] Here, Green received an electronic notification from the district court of the filing of the motion for summary judgment. Green argues that under the

---

[1] *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 142 (5th Cir. 1996).

[2] *United Student Aid Funds, Inc. v. Espinosa*, —U.S.—, 130 S. Ct. 1367, 1378 (2010) (internal quotation marks and citations omitted).

No. 10-20080

local rules of the district court, pro se litigants are not permitted to use or access electronic filing. Nevertheless, Green's withdrawing attorney provided the court with Green's contact information, including his email address, and that address was in the electronic filing system. Notice of electronic filing is automatically generated.[3] Subsequent to the filing of Blanco River's motion for summary judgment, but prior to the deadline for filing a response to the motion for summary judgment, Green used the email address listed in the electronic notification system to contact the court. Green also used the court's electronic filing system to file his notice of appeal. In light of the foregoing, the notification actions were reasonably calculated to reach Green and provided him with actual notice of the motion for summary judgment. In fact, Green's own lawyer, Gallman, acknowledged that Green should have known of the deadline to file a response to the motion for summary judgment. Moreover, Green has no safe harbor as a result of his *pro se* status: *pro se* litigants do not receive special notice treatment with respect to summary judgment motions.[4] Even after counsel for Green was to appear, Green did not seek to have the district court reconsider the motion for summary judgment or offer any basis on which he could argue that the summary judgment was without merit.

Green was not denied due process by the entry of the summary judgment, and therefore, the underlying order is not a nullity or void.

### III

Green assails the district court's supplemental findings and declaration on another ground. He contends that the summary judgment was a final order and that the district court could not modify that judgment or make additional findings after it no longer had jurisdiction over that judgment. In examining

---

[3] S.D. Tex. LR 5.1.

[4] *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

No. 10-20080

this contention, we first confirm that the summary judgment was indeed a final judgment, as Green contends.

Green's briefing in our court points out that even though the suit involved more than one claim for relief, the motion for summary judgment was directed primarily at one cause of action. The order granting summary judgment disposed of all claims, as Green accurately asserts, and it was titled "Final Judgment." Although it may have been error for the judgment to adjudicate all causes of action if the motion for summary judgment was addressed to less than all causes of action, Green states that he treated the judgment as final by appealing it, Blanco River has treated it as final by seeking to collect the amounts awarded, and the district court has treated the judgment as final. We review questions of subject matter jurisdiction de novo.[5]

"In determining finality, we have advocated a practical interpretation that look[s] to the intention of the district court and held that if the judgment reflects an intent to dispose of all issues before the district court, we will characterize that judgment as final."[6] We noted as relevant to this practical inquiry "that no one associated with this case believed there to be a live remaining claim when judgment was entered."[7] In the instant case, this practical inquiry indicates that the district court entered a final order with respect to all of the claims brought by Blanco River when it entered the summary judgment. The order entered by the district court was stylized "Final Judgment"—a title that while not dispositive, is nonetheless suggestive. Green filed an appeal of the judgment without seeking a certificate of appealability under FED. R. CIV. P. 54(b).

---

[5] *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 186 (5th Cir. 2008).

[6] *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 525 (5th Cir. 2005) (internal quotation marks and citations omitted).

[7] *Id.* (internal quotation marks, brackets, and citations omitted).

No. 10-20080

Further, both parties have argued to this court that the "Final Judgment" entered by the district court was what it purports to be: a final judgment on the merits in this case. In light of the totality of the factual posture of this case, we agree.

It does not follow, however, that because there was a final judgment in the case, the district court was without jurisdiction to enter the supplemental findings and declaration. The findings and declaration are referable to the post-judgment discovery and collection issues that were pending before the district court. Green responded to post-judgment collection efforts by asserting that John Aird had no authority to cause Blanco River to collect the judgment because, among other contentions, Green had never been removed properly as the manager of Blanco River. The supplemental findings and declaration that "[b]y July 15, 2006, at the latest, Green had abandoned and forfeited his authority for Blanco River, L.L.C." were made in aid of the court's authority to enforce its judgment. They were fully consistent with the facts subsumed in issuing the judgment against Green many months earlier. The basis for Blanco River's motion for summary judgment was that Green had breached his fiduciary duty to Blanco River by spending its funds for his own personal use and his other defalcations. The supplemental findings and declaration did not alter or amend that judgment but were in response to assertions Green made in his efforts to thwart collection of the judgment.

## IV

Jurisdiction to review a final decision on sanctions including specific damages is granted by 28 U.S.C. § 1291.[8] We review a district court's imposition

---

[8] *See S. Travel Club, Inc. v. Carnival Air Lines, Inc.,* 986 F.2d 125, 129 (5th Cir. 1993).

of sanctions for abuse of discretion.[9]  Jurisdiction to sanction does not require subject matter jurisdiction over the case but rather requires a showing of authority to sanction.[10]

The sanctions order does not state the authority under which it is issued. The record of the hearing indicates that Rule 11 of the Federal Rules of Civil Procedure was not the basis, and as noted by Green and Gallman, the procedural requirements for imposing Rule 11 sanctions were not met.  The sanctions order also discusses the filing of the Hays County suit.  We have indicated that one cannot use FED. R. CIV. P. 11 "to regulate *state* court activities."[11]

Alternatively, Blanco River contends that by unreasonably and vexatiously multiplying the proceedings in this case, the filing of the Hays County suit could be sanctioned pursuant to 28 U.S.C. § 1927.  Yet the court sanctioned both Green and Gallman, and § 1927 only reaches attorneys.[12]

It appears that the sanctions against Green and Gallman were imposed pursuant to the court's inherent authority.  This authority includes that to punish "defiant, bad-faith conduct" in state court that  hinders an order of a federal court.[13]  The Supreme Court has held that the inherent power "reaches both conduct before the court and that beyond the court's confines" such that courts may achieve "submission to their lawful mandates."[14]

---

[9]  *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004); *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 533 (5th Cir. 1992).

[10]  *See Willy v. Coastal Corp.*, 915 F.2d 965, 967 (5th Cir. 1990).

[11]  *Id.* at 968 n.8 (emphasis in original).

[12]  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991).

[13]  *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 794 (5th Cir. 1993).

[14]  *Chambers*, 501 U.S. at 43-44.

No. 10-20080

Sanctions under the court's inherent authority require a finding of bad faith.[15] Green asserts that there was no finding of bad faith by the district court. We have said that "[w]hen bad faith is patent from the record and specific findings are unnecessary to understand the misconduct giving rise to the sanction, the necessary finding of 'bad faith' may be inferred."[16] In reviewing sanctions, we have inferred that "it would be empty formalism to find an abuse of discretion for failure to invoke the magic words bad faith."[17] But reversal of sanctions is warranted where "the district court merely made general complaints about the sanctioned party."[18]

The record supports the conclusion that the district court found bad faith. Post-judgment interrogatories asked Green to provide his full name, current address, current business affiliations, and financial information, among other requests for information. The answers filed by Gallman on behalf of Green to each and every post-judgment interrogatory asserted the same objection, which included an assertion that John Aird had never been authorized to bring any legal action on behalf of Blanco River and that Aird was not authorized by Blanco River to collect the judgment that Blanco River had obtained against Green.[19] Gallman had also asserted in correspondence regarding the judgment

---

[15] *Goldin v. Bartholow*, 166 F.3d 710, 722 (5th Cir. 1999).

[16] *In re Sealed Appellant*, 194 F.3d 666, 671 (5th Cir. 1999).

[17] *Id.* at n.16 (internal quotation marks and citations omitted).

[18] *Goldin*, 166 F.3d at 722 (citing *Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995)).

[19] Green's response to each of the post-judgment interrogatories was similar or identical to the following objection:

GREEN objects to this and all other Interrogatories on the basis that John Aird has no authority from Blanco River, LLC to institute any legal action, including the enforcement of any judgtnent [sic], on behalf of Blanco River, LLC. Mr. Aird never had the required consent of the Members as stated clearly in the Operating Agreement to institute any legal proceeding. Similarly, Mr.

## No. 10-20080

that it was rendered without an opportunity for Green to be heard or to respond. The district court explored these matters in some detail with Gallman at the hearing on the request for sanctions. Gallman acknowledged that whether Blanco River was authorized to bring the suit against Green that resulted in a judgment against him was subsumed in the underlying suit and the final judgment in that case. The authority of Blanco River to sue was also a matter that could and should have been appealed if Green disputed the underlying authority to bring suit. Gallman acknowledged this as well as the fact that he, as counsel for Green, filed and later dismissed an appeal from the judgment against Green.

Similarly, Gallman acknowledged that Green did have notice of the filing of the summary judgment and hearing date, but Gallman asserted at the hearing on the motion for sanctions that he was simply mistaken in overlooking an indication in the record that actual notice of the filing of the motion for summary judgment was sent to Green. The district court pointed out, correctly, that under the local rules of the district courts in the Southern District, when a summary judgment motion is filed, a response is automatically due in 20 days, the matter is deemed under submission after the expiration of that period of time, and the district court may rule at any time thereafter, with or without notice to the parties. No hearing or hearing date is required. It was immaterial whether Green received notice of a hearing because no hearing was required and no hearing was held. The record reflects that he had in fact been given notice of the filing of the motion for summary judgment, and that sufficed.

---

Aird does not currently have the required consent of the Members to take any action to enforce any judgment on behalf of Blanco River, LLC. Further, GREEN objects that this Interrogatory is overbroad, irrelevant and not likely to lead to admissible evidence.

11

No. 10-20080

The facts in the record support a finding of bad faith in answering the post-judgment interrogatories and in correspondence regarding efforts to collect the judgment. The court's comments at the hearing on the request for sanctions are tantamount to such a finding.

Although the district court's written order imposing sanctions stated, "The [Hays County] suit had no basis in fact or law. It was simply an attempt to impede the enforcement of the judgment and had no legitimate purpose," the record of the hearing makes clear that the district court was not basing sanctions on any action that Green or Gallman took in the Hays County suit. The district court expressly stated that it was not imposing sanctions based on actions in that state court proceeding. Instead, the district court expressly indicated at the hearing that it was basing the sanctions on the conduct of Green and Gallman in connection with efforts to collect the judgment in the district court. Given the facts, the district court's finding of bad faith is not an abuse of discretion.

Green and Gallman contend that the district court could not award $4,000 in sanctions unless it determined, based on a sworn statement or billing records, that the total hours claimed were reasonable and reasonably expended. However, the case that they cite in support of this proposition pertained to an award of more than $4,000,000 as attorneys' fees as damages, in addition to actual damages, in an anti-trust suit.[20] Here, the district court used the amount of fees that Blanco River incurred in pursuing post-judgment remedies in the district court as a proxy for the amount that should be imposed as sanctions. The district court inquired at one juncture how much Aird had been charged in defending the Hays County suit and was told the amount was approximately $12,000. The district court then stated on the record that it was not going to

---

[20] *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323 (5th Cir. 1995).

12

sanction actions in the state court suit, but would sanction actions regarding post-judgment discovery pertaining to the judgment issued by the district court. Blanco River's attorneys were asked how much they had expended in pursuing post-judgment remedies, and the response, from an officer of the court, was "approximately $3,700, $3,728." The district court then chose $4,000 as the amount of the sanction. There was no objection that sworn testimony or affidavits were required, or that the district court was without authority to choose some amount, even if unrelated to actual attorneys' fees, as the amount of sanctions. We cannot say on the record before us that the district court abused its discretion in selecting $4,000 as the amount of sanctions to be imposed.

## V

The district court entered an injunction pursuant to the relitigation exception to the Anti-Injunction Act.[21] We have jurisdiction to review the entry of an injunction pursuant to 28 U.S.C. § 1291. We review de novo whether the Anti-Injunction Act permits the issuance of an injunction, then review the actual decision to issue an injunction for abuse of discretion.[22]

As a preliminary matter, we can dismiss Green and Gallman's contention that an injunction is moot owing to their "non-suiting" of the Hays County case. To be moot, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur" and that the "heavy burden" of persuasion lies on the party arguing mootness.[23] They have not carried this

---

[21] 28 U.S.C. § 2283.

[22] *Regions Bank of La. v. Rivet*, 224 F.3d 483, 488 (5th Cir. 2000).

[23] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (citations omitted).

burden, given their previously demonstrated predilection for attempting to relitigate the issues in this case even after abandoning suits or appeals.

In light of principles of federalism and comity, courts generally tread lightly when utilizing the relitigation exception to the Anti-Injunction Act.[24] We employ a four-part test to determine whether the exception permits an injunction:

> (1) parties in the later action must be identical to or in privity with the parties in the previous action; (2) judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action must have concluded with a final judgment on the merits; and (4) the same claim or cause of action must be involved in both suits.[25]

These four prongs have been met. It is uncontested that the same parties were involved in both the federal and state court suits and that the district court had jurisdiction over the original suit. With respect to the third prong, the district court's grant of summary judgment was a final judgment. Lastly, the argument that Green and Gallman raised in the Hays County suit—Aird's purported lack of authority to act on behalf of Blanco River—was previously raised as a defense in the federal suit.

Green and Gallman argue, in the alternative, that the issuance of an injunction is precluded by the equitable doctrine of laches because the parties purportedly litigated the Hays County suit for seven months prior to Blanco River's seeking relief in federal court. A determination by the lower court not to bar a suit on the basis of laches is reviewed for abuse of discretion.[26] This court employs a three-factor test in evaluating laches: "(1) delay in asserting a

---

[24] *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 407-08 (5th Cir. 2008).

[25] *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 273 (5th Cir. 2009).

[26] *Kennedy v. Electricians Pension Plan, IBEW No. 995*, 954 F.2d 1116, 1121 (5th Cir. 1992).

right or claim; (2) that the delay was inexcusable; (3) that undue prejudice resulted from the delay."[27]  Here, the determination that a seven-month delay was insufficient was not an abuse of discretion.

The injunction as issued, however, fails to comport with FED. R. CIV. P. 65(d).  That rule requires that an injunction "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."[28]  An injunction cannot be overly vague—a question of procedural due process—or overly broad—a question of substantive law.[29]  After discussing the Hays County suit, the same defense raised in the Illinois registration dispute, and the post-judgment discovery objections, the injunction enjoins Green and Gallman "from interfering in the collection of this court's judgment."  Previously this court determined an injunction to be overly vague where the injunction prohibited the release of personal information that would allow a recipient "to ascertain the name, address, ranch, or location" of those protected by the injunction.[30]  We held that this was overly vague because the defendants would be forced to determine what information might allow a third party to ascertain the prohibited identities and addresses.[31]  In the instant case, Green and Gallman are enjoined from taking actions that may be lawful and permissible in response to collection efforts.  For example, would Green be in violation of the injunction if he filed for relief under the Bankruptcy Code?  Would Gallman be in violation if he asserted proper,

---

[27] *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1161 (5th Cir. 1982).

[28] FED. R. CIV. P. 65(d).

[29] *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).

[30] *Id.* at 813.

[31] *Id.* at 820.

No. 10-20080

lawful objections to impermissible efforts to collect the judgment?  As a result, the injunction does not comport with FED. R. CIV. P. 65(d).

## VI

Green and Gallman urge us to reassign the case to a different district court judge on remand, pursuant to 28 U.S.C. § 2106.[32]  We have stated that the "power to reassign pending cases is an extraordinary one; it is rarely invoked."[33] We have identified two tests, both of which have been used by this court in assessing such reassignments.  In *In re DaimlerChrysler Corp.*, we evaluated on the basis of both tests.[34]  The first is:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.[35]

The second test asks if the facts "might reasonably cause an objective observer to question [the judge's] impartiality."[36] Though the district court here may have expressed displeasure at times, it also explicitly stated that it was cognizant of its responsibilities, and would faithfully execute its duties.  Reviewing the record in its totality, this extraordinary remedy is not justified.

*           *           *

---

[32] *See, e.g.*, *Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir. 1997).

[33] *Id.* (quoting *In Re John H. McBryde*, 117 F.3d 208, 228-29 (5th Cir. 1997)).

[34] 294 F.3d 697, 700-01 (5th Cir. 2002).

[35] *Id.*

[36] *Id.* at 701.

No. 10-20080

For the foregoing reasons, we AFFIRM the district court's sanctions and the district court's determination that it had jurisdiction to enter additional findings, VACATE the injunction as granted, DENY the motion to reassign the case on remand, and REMAND for proceedings consistent with this opinion.